586 So.2d 1038 (1991)
Mark A. DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 70551.
Supreme Court of Florida.
September 5, 1991.
Rehearing Denied October 30, 1991.
*1039 Mark A. Davis, in pro. per.
Aubrey O. Dicus, Jr. and Margie I. Fraley of Battablia, Ross, Hastings & Dicus, St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen. and Gary O. Welch and Peggy A. Quince, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Mark A. Davis was convicted of first-degree murder, robbery, and grand theft. The jury recommended the death penalty by a vote of eight to four, which the trial judge imposed. Appellant appeals his murder conviction and death sentence.[1] We *1040 have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant came to St. Petersburg, Florida, during late June 1985, and immediately prior to the murder of Orville Landis apparently had been living in the parking lot of Gandy Efficiency Apartments. On July 1, 1985, Landis was moving into one of the apartments, and appellant offered to assist him. Subsequent to moving, the two men began drinking beer together, and appellant borrowed money from Landis. Witnesses testified that Landis had approximately $500 in cash that day. Appellant told Kimberly Rieck, a resident of the apartment complex, that he planned to get Landis drunk and "see what he could get out of him." During approximately the same time, appellant told Beverly Castle, another resident, that he was going to "rip him [Landis] off and do him in." Shortly thereafter, Landis and appellant were seen arguing about money and they went to Landis' apartment.
Landis was last seen alive on July 1, 1985, at approximately 8:30 p.m. Castle testified that appellant appeared at her door at about midnight and told her that he had to leave town right away, and would not be seen for two or three years. Castle observed appellant driving away in Landis' car. During the afternoon of July 2, Castle became concerned and had Landis' apartment window opened, through which she observed him lying on his bed in a pool of blood.
When the police arrived they found Landis' wallet empty of all but a dollar bill. A fingerprint found on a beer can in the apartment was later identified as appellant's. The medical examiner testified that the victim sustained multiple stab wounds to the back, chest, and neck; multiple blows to the face; was choked or hit with sufficient force to break his hyoid bone; was intoxicated to a degree that impaired his ability to defend himself; and was alive and conscious when each injury was inflicted. The evidence showed that the slashes to the victim's throat were made with a small-bladed knife, which was broken during the attack, and the wounds to the chest and back were made with a large butcher knife, found at the crime scene.
Appellant confessed to the police to the killing, as well as to the taking of Landis' money and car. He also told a fellow inmate that he killed Landis but expected to "get second degree," despite his confession, by claiming self-defense.
Appellant raises nine points on appeal, five of which are raised pro se. Relying on Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), he argues that the statutory aggravating factor "especially heinous, atrocious, or cruel" is unconstitutionally vague. We rejected this argument in Smalley v. State, 546 So.2d 720 (Fla. 1989).
Appellant asserts there was insufficient evidence that the murder was cold, calculated, and premeditated.[2] We disagree. Castle testified that appellant told her he was going to rip the victim off and "do him in." Furthermore, during the course of inflicting twenty-five stab wounds upon the victim, appellant first used a butcher knife and then resorted to a second knife to continue the brutal slaying. The medical expert opined that no struggle took place other than in the victim's bed, and that the attacker was standing next to the bed during the murder. These facts support the finding that this murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Haliburton v. State, 561 So.2d 248 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991).
Appellant argues that the trial court erred by allowing the victim's daughter to *1041 read a statement to the sentencing judge.[3] In Grossman v. State, 525 So.2d 833, 842, 845 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), we held that admission of "victim impact" evidence as an aggravating factor in capital sentencing is subject to harmless error analysis. We hold the error here harmless. Relevant to that analysis is the fact that the jury was not exposed to the improper evidence of victim impact, yet recommended death.[4] The sentencing judge's written findings in aggravation are limited to statutorily enumerated factors  there is no evidence of reliance on the daughter's statement.[5] We conclude beyond a reasonable doubt that the sentencing judge would have imposed the death penalty in the absence of the victim impact evidence.
Appellant asserts that the court committed error in the admission of a videotape and a color photograph. We disagree. The videotape depicts the victim's wounds and the murder scene, and was used by the medical examiner during her testimony to explain the wounds inflicted, and to demonstrate that two different knives were used. The videotape was also used to show that the murder scene was inconsistent with a struggle outside of the confines of the victim's bed, thus refuting appellant's claim of self-defense. The photograph, of the victim's face, depicts wounds not visible on the videotape. These were relevant and admissible. Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). See also Thompson v. State, 565 So.2d 1311, 1315 (Fla. 1990) (gruesome nature of photographs does not render decision to admit them into evidence an abuse of discretion).
The trial judge granted appellant the right to act as cocounsel, but determined that only one attorney for each side would be permitted to approach the bench, examine and cross-examine witnesses, and make objections. In these decisions and in several other matters[6] appellant pro se claims he was denied due process. We disagree. A criminal defendant does not simultaneously enjoy a right to assistance of counsel and the right to represent himself. State v. Tait, 387 So.2d 338 (Fla. 1980). When the accused is represented by counsel, the privilege of addressing the court is a matter for the court's discretion. Id. at 340. We find no abuse of discretion in the trial court's limitations upon appellant's actions as cocounsel.
Appellant pro se raises several claims[7] which are unsupported by the record and are therefore without merit.
Appellant pro se also asserted that he was absent from the courtroom, using the bathroom, when jury challenges were exercised. See Francis v. State, 413 So.2d 1175 (Fla. 1982). Because the record was unclear regarding when or whether appellant was absent from the courtroom during the proceedings or whether his presence was waived, we remanded the cause for a hearing to determine these facts. The trial court reporter, the trial judge, appellant, his trial counsel, and counsel for the state testified at the hearing. The trial judge appointed for these supplemental proceedings found that appellant was in the courtroom during the time in question. This finding is supported by competent substantial evidence; we therefore find the issue to be without merit.
*1042 For these reasons we affirm the conviction for first-degree murder and the sentence of death.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Although appellant does not challenge his grand theft and robbery convictions, they are supported by competent substantial evidence in the record and we affirm them.
[2] The court also found that the capital felony was committed while under sentence of imprisonment; appellant previously had been convicted of a capital offense or felony involving the use or threat of violence; and the murder was heinous, atrocious, or cruel. § 921.141(5), Fla. Stat. (1985).
[3] In the statement, the daughter asked that appellant receive the death penalty. Our case is thus distinguishable from Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 2611 & n. 2, 115 L.Ed.2d 720 (1991).
[4] The statement was heard by the trial judge alone and only after the jury had recommended death in its advisory sentence.
[5] The trial judge found four aggravating circumstances, supra note 2, and no mitigating circumstances.
[6] Appellant's motion to hire a private investigator was relayed to the public defender's office without action by the court; appellant's motion to suppress an order to retake depositions was not argued in open court.
[7] Comments made during trial (1) constituted impermissible comment on his failure to testify, (2) improperly placed his character at issue, or (3) were (without specificity) improper.